CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 12 2015

JULIA A. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DAISY TINSLEY, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 3:15CV00043 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| | ) By: Hon. Glen E. Conrad |
| HEATHER STREICH, MD, et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |

In this action, which was removed from the Circuit Court of the City of Charlottesville, plaintiffs Daisy Tinsley, on behalf of herself and as guardian of her daughter, Kaylee Twyman ("Kaylee"), and Jermaine Twyman assert claims against defendants Heather Streich, M.D. ("Dr. Streich"), Gary Fang, M.D. ("Dr. Fang"), University of Virginia Physicians Group Inc. ("UVA Physicians"), Precision Dose Inc. ("Precision"), L. Perrigo Company ("Perrigo"),[1] and Family Dollar Services Inc. ("Family Dollar"). This case is presently before the court on plaintiffs' motion to remand and Perrigo's motion to sever. For the reasons set forth below, the court will grant plaintiffs' motion and deny Perrigo's motion.

## Background

### I. Food and Drug Administration's Warnings About Acetaminophen

In 2008, the Food and Drug Administration ("FDA") released its "Drug Safety Newsletter" in which it stated that the occurrence of six cases of Stevens-Johnson Syndrome ("SJS")/toxic epidermal necrolysis ("TEN") in the past eight years was "critically important information" for the medical professions to consider when "assessing the risk benefit profile of a

---

[1] In their complaint, plaintiffs referred to Perrigo as the "Perrigo Company." However, in its notice of removal, Perrigo stated that its business name is in fact "L. Perrigo Company."

drug." Compl. ¶ 24, Docket No. 1, Ex. A. The FDA again warned about the risks of SJS/TEN in the following two editions of its newsletter.

On August 1, 2013, the FDA issued a warning to healthcare providers about the connection between acetaminophen and severe, life-threatening skin conditions, such as SJS/TEN. It cautioned healthcare providers to be aware of this risk and instructed that "anyone developing a skin rash while taking [a]cetaminophen, stop the drug immediately." Id. ¶ 10. The FDA provided that it "will require that a warning be added to the labels of prescription drug products containing acetaminophen to address the risk of serious skin reactions." Id. ¶ 25. In addition, it will "request that manufacturers add a warning about serious skin reactions to the product labels of OTC acetaminophen drug products marketed under a new drug application" and would "encourage manufacturers of drug products marketed under the OTC monograph [to] do the same." Id.

## II.     Kaylee's Use of Acetaminophen

Daisy Tinsley and Jermaine Twyman are Kaylee's parents, and each plaintiff is a citizen of Virginia. Dr. Streich, Dr. Fang, and UVA Physicians (collectively, the "Virginia Healthcare Defendants") are also citizens of Virginia. Defendants Precision, Perrigo, and Family Dollar (collectively, the "Removing Defendants") are citizens of Illinois, Michigan, and North Carolina, respectively. Notice of Removal ¶¶ 5-7, Docket No. 1.

On or about October 7, 2014, Kaylee, who was five years old at the time, went to the emergency room at Culpeper Hospital with a minor fever, sore throat, and stomach ache. She was given a 320 mg cup of acetaminophen by Justin C. Stone, M.D. and discharged with a diagnosis of "viral syndrome." Compl. ¶ 11. On or about October 24, 2014, Kaylee returned to the Culpeper Hospital's emergency room with "bilateral eye erythema, nasal congestion, and

truncal skin rash without fever." Id. at ¶ 12. She was given a 211.204 mg cup of acetaminophen by Dr. Streich and sent home with a diagnosis of "viral exantham [sic] and viral conjunctivitis." Id. Dr. Streich also instructed Tinsley and Twyman to give Kaylee additional dosages of children's acetaminophen at home, which they did. The next day, Dr. Streich saw Kaylee at the University of Virginia's emergency department in Charlottesville, Virginia. At that point, Kaylee had a body rash, mouth sores, and fever. Dr. Streich gave her a 325 mg cup of acetaminophen and sent her home with a diagnosis of conjunctivitis and chicken pox.

On or about October 27, 2014, Kaylee returned to the University of Virginia's emergency department with a body rash that covered her upper and lower extremities, tongue, and lips. She was diagnosed with "varicella infection with secondary staph superinfection involving mucosal membranes." Id. at ¶ 15. Her medical reports also noted that her symptoms and rash were possible signs of SJS/TEN. She was given vancomycin and clindamycin for a presumed staphylococcal superinfection. Id. That same day, dermatologist Barbara Wilson, M.D. also diagnosed Kaylee with "Erythema Multiforme major." Id. at ¶ 16. Kaylee was then admitted to the University of Virginia's Pediatric Intensive Care Unit under the care of Dr. Fang, who continued to give her acetaminophen. Kaylee continued to take acetaminophen from October 28, 2014 to November 4, 2014.

Kaylee was eventually diagnosed with TEN in addition to "polymicrobial bacterial sepsis, shock, and respiratory failures." Id. at ¶ 19. On November 13, 2014, she was transferred to the Burn Unit at Shriners Hospital in Boston, Massachusetts. Two days later, Kaylee was also diagnosed with "distal necrosis" of her fingers, requiring amputation. She remained at Shriners Hospital from November 18, 2014 until March 20, 2015. Kaylee currently lives with her parents in Virginia. Plaintiffs allege that Kaylee suffered, and will continue to suffer from, various

3

injuries, including "eye damage, vocal chord damage, scarring, loss of appendages, heart complications, and general debility." Id. at ¶ 23. She also suffers from emotional damage consistent with post-traumatic stress disorder.

### III. Procedural History

On July 8, 2015, plaintiffs filed their complaint in the Circuit Court for the City of Charlottesville, alleging negligence and vicarious liability against the Virginia Healthcare Defendants and negligence against the Removing Defendants. On August 18, 2015, Perrigo filed a notice of removal in this court, claiming that jurisdiction is proper under 28 U.S.C. § 1332. In its notice, Perrigo argued that although the Virginia Healthcare Defendants are citizens of Virginia, they were fraudulently misjoined and therefore their inclusion in the case does not defeat diversity jurisdiction. That same day, Perrigo filed a motion asking the court to sever the claims against the Virginia Healthcare Defendants from the claims against the Removing Defendants, so that the court may retain jurisdiction over the claims against the Removing Defendants. On August 24, 2015, plaintiffs filed a motion to remand the case back to state court, arguing that the Virginia Healthcare Defendants were properly joined and, thus, complete diversity between the parties is lacking. The motions have been fully briefed and were argued on September 14, 2015. They are now ripe for review.

### Discussion

Defendants in civil actions filed in state court, who are not themselves citizens of that state, may remove a case if "the district courts of the United States have original jurisdiction" over the case. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over two kinds of civil actions. First, federal courts have original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331; see also U.S. Const. art. III,

4

§ 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made..."). Second, federal courts have original jurisdiction over civil actions between citizens of different states, between U.S. citizens and foreign citizens, and by foreign states against U.S. citizens, so long as the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332; Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Diversity jurisdiction under § 1332 requires "complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

If a plaintiff files an action in state court with respect to a matter over which the federal courts have original jurisdiction, the defendant may remove the case to the district court for the district in which the state court is located. 28 U.S.C. § 1441(a). A defendant may not remove a case, however, if the defendant is a citizen of the state in which the action was brought. Id. § 1441(b). In addition, "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removing party bears the burden of showing that removal is proper. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Because removal jurisdiction raises "significant federalism concerns," the district court must strictly construe removal jurisdiction and, if federal jurisdiction is doubtful, "a remand [to state court] is necessary." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). However, federal courts are obliged to carefully scrutinize challenges to jurisdiction authority and must "do more than simply point jurisdictional traffic in the direction of state courts." 17th Street Assocs., LLP v. Market Int'l Ins. Co., 373 F. Supp. 2d 584, 592 (E.D. Va. 2005).

## I. Consent to Removal

As an initial matter, plaintiffs argue that the court should remand this case because the Virginia Healthcare Defendants did not consent to removal. A defendant seeking removal must file a notice of removal within 30 days after receipt of the initial pleading setting forth the plaintiff's claim for relief. 28 U.S.C. § 1446(b)(1). In cases with multiple defendants, "all defendants who have been properly joined and served must join in or consent to the removal of the action." Id. § 1446(b)(2)(A). If the defendants are served at different times, and a later-served defendant files a notice of removal, then any earlier-served defendant may consent to the removal even though that defendant did not previously initiate or consent to removal. Id. § 1446(b)(2)(C). In other words, "an earlier-served defendant's failure to remove does not preclude a later-served defendant from removing." Mudd v. Comcast of Md., LLC, No. PWG-14-2310, 2015 WL 773017, at *3 (D. Md. Feb. 23, 2015). Courts in the Fourth Circuit, however, do not require consenting defendants to sign the notice of removal or file a separate notice of removal. Mayo v. Bd. of Educ. of Prince George's Cty., 713 F.3d 735, 742 (4th Cir. 2013).[2] Instead, "a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement for unanimous consent for the purpose of removal." Id.

In this case, Perrigo was served on July 29, 2015 and filed its notice of removal on August 18, 2015. Therefore, the court finds that Perrigo's notice of removal is timely. The other defendants were served before Perrigo: Precision was served on July 27, 2015; Dr. Streich was served on July 27, 2015; Dr. Fang was served on July 27, 2015; Family Dollar was served on July 24, 2015; and UVA Physicians was served on July 10, 2015. In its notice of removal,

---

[2] In Mayo, the Court interpreted an earlier version of 28 U.S.C. § 1446. 713 F.3d at 740. However, the Court found that its reasoning would have been the same even if it were analyzing the current version of the statute. Id. at 741 n.1.

6

Perrigo stated that "[d]efendants Precision Dose Inc. and Family Dollar Services Inc. consent to this removal." Notice of Removal ¶ 29. On August 28, 2015, Perrigo filed a supplement to its notice of removal, stating that the Virginia Healthcare Defendants consented to removal, and, in support, attached an email from counsel for the Virginia Healthcare Defendants.

Plaintiffs argue that the supplemental pleading is defective because it did not establish that Virginia Healthcare Defendants unambiguously consented to removal. The court disagrees. The requirement set forth in <u>Mayo</u> is that the defendant must file a notice of removal "<u>representing</u> <u>unambiguously</u> that the other defendants consent to removal." 713 F.3d at 742 (emphasis added). Here, counsel's email represented unambiguously that the Virginia Healthcare Defendants consented to removal. <u>See</u> Suppl. Notice of Removal Ex. A., Docket No. 15-1 ("On behalf of University of Virginia Physicians Group, Dr Streich and Dr. Fang, we consent to your removal of this action to federal court[.]"). Moreover, Perrigo stated unambiguously that its subsequent pleading "supplements its Notice of removal and formally notifies the Court that the Virginia Healthcare Defendants consent to removal." Suppl. Notice of Removal ¶ 5, Docket No. 15. Therefore, the court finds that both the notice of removal and supplemental notice of removal, signed by counsel, contain unambiguous representations that all defendants consented to removing the case to federal court, as required under <u>Mayo</u>.

Plaintiffs also contend that, even if all defendants consented to removal, the form of Perrigo's pleading is insufficient. Specifically, they argue that Perrigo was required to file an amended notice of removal in order to cure the lack of unanimous consent in its original notice. The court finds that Perrigo's pleading was sufficient to amend its notice of removal. As plaintiffs correctly point out, courts in the Fourth Circuit do not allow a defendant to amend a notice of removal through a memorandum in opposition to a motion to remand. <u>McFadden v.</u>

7

Fed. Nat. Mortg. Ass'n, 525 F. App'x 223, 233 (4th Cir. 2013). However, in the instant case, Perrigo did not seek to amend its notice of removal through a memorandum. Instead, Perrigo filed an additional notice of removal, stating unequivocally that it intended to supplement its original notice of removal. Perrigo also stated that "its filing here is <u>not</u> its response to the motion to remand, which will be timely file[d] at a later date." Suppl. Notice of Removal ¶ 5 n.2 (emphasis in original). Therefore, the court finds that Perrigo's later pleading was proper in order to supplement its notice of removal.

In addition, plaintiffs argue that Perrigo did not obtain the Virginia Healthcare Defendants' consent until after it had already removed the case. However, the court finds that Perrigo was not required to obtain consent from the Virginia Healthcare Defendants prior to filing its notice of removal. 28 U.S.C. § 1446 provides that a defendant may consent to removal when a later-served defendant files a notice of removal, even though that defendant "did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C). Here, Perrigo filed its notice of removal and then obtained consent from the Virginia Healthcare Defendants, which is permissible under the current version of § 1446. Also, as an alternative argument, Perrigo notes that it did not previously obtain consent from the Virginia Healthcare Defendants because it believed that they were not properly joined, and therefore that their consent was not required under § 1446(b)(2)(A). Overall, the court finds that Perrigo obtained unanimous consent from all defendants and satisfied the removal statute.

## II. <u>Diversity Jurisdiction</u>

Having determined that Perrigo obtained unanimous consent to remove this action to federal court, the court must now determine whether it has subject matter jurisdiction to retain the case, which is the crux of the parties' disagreement. In the context of diversity jurisdiction,

8

there are two distinct legal doctrines that "allow courts to disregard the citizenship of non-diverse parties and retain jurisdiction." Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc., 807 F. Supp. 2d 375, 379 (D. Md. 2011). The first, fraudulent joinder, applies when the plaintiff pleads fraudulent facts or joins several defendants in the action where there is "no possibility of success against those defendants." Id. The second, fraudulent misjoinder, on which Perrigo relies, is a more recent legal doctrine that was first articulated by the Eleventh Circuit in Tapscott v. MS Dealer Service Corporation, 77 F.3d 1353, 1360 (11th Cir. 1996). Specifically, fraudulent misjoinder is "an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." Wyatt v. Charleston Area Med. Ctr., Inc., 651 F. Supp. 2d 492, 496 (S.D. W. Va. 2009). The doctrine was created in order to "prevent unscrupulous plaintiffs from improperly joining non-diverse parties in a fraudulent attempt to avoid a federal forum." Larson v. Abbott Labs., No. ELH-13-00554, 2013 WL 5937824, at *13 (D. Md. Nov. 5, 2013).

The Fourth Circuit has not expressly adopted the fraudulent misjoinder doctrine and district courts within the circuit have disagreed as to whether to adopt it. Id. at *12. Among the courts that have adopted the fraudulent misjoinder doctrine, there is additional disagreement over the standard that applies when deciding whether a party has committed fraudulent misjoinder. Id. In Tapscott, the Court held that "[plaintiffs'] attempt to join these parties is so egregious as to constitute fraudulent joinder." 77 F.3d at 1360. Some district courts have taken this language to mean that the misjoinder must be egregious in order to find fraudulent misjoinder. See, e.g., Wyatt, 651 F. Supp. 2d at 496 ("[The court] could not find that the joinder was 'so egregious as to constitute fraudulent joinder.'" (quoting Tapscott, 77 F.3d at 1360)). However, the majority of

9

district courts within the Fourth Circuit that have adopted the fraudulent misjoinder doctrine have declined to impose an egregious requirement. See Larson, 2013 WL 5937824, at *12 (listing cases); see also Stephens, 807 F. Supp. 2d at 380 (same).

Moreover, there is a split among district courts as to whether fraudulent misjoinder should be analyzed under the state or federal rule governing permissive joinder of parties. In Tapscott, the Eleventh Circuit analyzed the case under the federal rule, but noted that the state joinder rule had identical language. Tapscott, 77 F.3d at 1355 n.1. The district court in Stephens conducted a similar analysis and found that Maryland's permissive joinder rule was "substantively identical to its federal counterpart and need not be considered independently." 807 F. Supp. 2d at 381 n.5. Here, the Virginia and federal rules for permissive joinder of parties are "virtually identical, though the Virginia statute and rule omit any reference to 'series of transactions or occurrences.'" Wright v. Lilly, 66 Va. Cir. 195, at *5 (2004).

In this case, the court ultimately need not address these unsettled issues regarding fraudulent misjoinder. Even if the court were to adopt the doctrine as an exception to the complete diversity rule, which it declines to do, the court finds no misjoinder under either the federal or the state rule. See Larson, 2013 WL 5937824, at *13 ("Fortunately, [the court] need not enter this doctrinal thicket. Even if [the court] adopted the fraudulent misjoinder doctrine, despite its flaws, applying it to sever the claims in this case would turn the doctrine entirely on its head."); see also Stephens, 807 F. Supp. 2d at 381 n.4 ("[T]he issue of egregiousness would not even come into play insofar as this Court concludes there was no misjoinder.").

### a. *Same Transaction or Occurrence*

Under both the Virginia and federal rules for permissive joinder of parties, a plaintiff may join several defendants in one action if any right of relief the plaintiff asserts against the

10

defendants, in the alternative, arises out of the same transaction or occurrence. See Fed. R. Civ. P. 20(a)(2)(A) ("Persons ... may be joined in one action as defendants if ... any right to relief is asserted against them ... in the alternative with respect to or arising out of the same transaction [or] occurrence[.]"); see also Va. Code Ann. § 8.01-281 ("A party asserting ... a claim ... may plead alternative facts and theories of recovery against alternative parties, provided that such claims ... or demands for relief so joined arise out of the same transaction or occurrence."). Insofar as the Virginia joinder rule is substantially similar to the federal joinder rule, the court need not analyze each rule separately but will not consider whether the plaintiffs' right to relief arises out of a "series of transactions or occurrences" as that language is present only in the federal joinder rule. Fed. R. Civ. P. 20(a)(2)(A). While there is no clear rule or single test to determine whether a set of facts constitutes a single transaction or occurrence, courts generally construe the phrase "same transaction or occurrence" liberally insofar as claims arise from the same transaction or occurrence if they have a "logical relation to one another." Stephens, 807 F. Supp. 2d at 382 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)); see also Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) ("The transaction or occurrence test would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." (internal quotation marks omitted)). The logical relationship test provides that "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." 7 Wright et al., supra at § 1653. The Fourth Circuit has held that Rule 20(a) "should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Saval, 710 F.2d at 1031.

In this case, Perrigo argues that the medical malpractice claims and the product liability

claims do not arise out of the same transaction or occurrence. Specifically, it contends that the medical malpractice claims relate to the failure to diagnose an alleged adverse reaction to acetaminophen whereas the product liability claims relate to the failure to exercise reasonable care in the design, testing, manufacturing, marketing, and labeling of acetaminophen. In addition, Perrigo argues that the evidence necessary to prove the medical malpractice claims differs substantially from that needed to prove the product liability claims.

The court finds the authorities cited by plaintiffs to be more persuasive based on the facts in this case. In a similar case involving TEN and the drug Dilantin, the district court found no fraudulent misjoinder because "[t]he claims for relief asserted against all defendants are premised on the harmful effects produced by the drug[.]" N.C. ex rel. Jones v. Pfizer, Inc., No. C 12-00531 WHA, 2012 WL 1029518, at *4 (N. D. Cal. Mar. 26, 2012).[3] In another case involving use of the drug Mirapex and plaintiff's subsequent development of a compulsive gambling habit, the district court found that the claims against the doctor and drug manufacturer arose out of the same transaction or occurrence. See Rice v. Pfizer, Inc., No. 3:06-CV-0757-M, 2006 WL 1932565, at *3 (N.D. Tex. Jul. 7, 2006) ("All of the Plaintiffs' claims arise from injuries allegedly caused by taking Mirapex. Furthermore, the resolution of the negligence claim against the Pharmaceutical Defendants could affect the liability of the [doctor]."). Finally, in a state court case, the Circuit Court for the City of Portsmouth found that the plaintiff's claims against both the pharmaceutical manufacturers and the healthcare providers arose out of the same transaction or occurrence because, inter alia, of the possibility that the different sets of defendants would blame each other for the injury. See Wright, 66 Va. Cir. 195, at *14 ("The Court observes that at least one of the pharmaceutical manufacturers has ... claim[ed] that the

---

[3] The court notes, however, that the district court in this case applied an egregiousness standard for its fraudulent misjoinder analysis. As stated previously, this court declines to rule on whether to adopt an egregiousness standard in this case.

health-care providers knew of the risks associated with the drugs at issue and were in a better position than the pharmaceutical manufacturers to prevent injury and death.").

Based on the facts of this case, the court finds that plaintiffs' medical malpractice and product liability claims arise out of the same transaction or occurrence. Plaintiffs' claims against all defendants relate to Kaylee's use of acetaminophen, her subsequent injuries, and the alleged failure to warn of the risks of developing SJS/TEN after ingesting the drug. While Perrigo argues that proving the medical malpractice claim would do nothing to prove the product liability claim, the negligence allegations asserted against both the Removing Defendants and the Virginia Healthcare Defendants are so related that it is possible that a determination of the claims against the Removing Defendants could affect the Virginia Healthcare Defendants' liability. See Greene v. Novartis Pharm. Corp., No 7:07-CV-00091, 2007 WL 3407429, at *4 (M.D. Ga. Nov. 14, 2007) (holding that "[c]learly, the product liability and medical negligence claims arise from the same transaction or occurrence" because "[p]laintiffs' claims involve the same injury caused by the same drug, and the resolution of the claim against [the manufacturer] could affect the liability of [the doctor]"); see also Rice, 2006 WL 1932565, at *3 ("If the Pharmaceutical Defendants prove that they provided adequate warning to physicians and/or the public ... then [the doctor] may be liable for medical malpractice because he knew or should [have] known of the risks based on the Pharmaceutical Defendants' warning."). In this case, if the Removing Defendants are liable for failing to warn healthcare providers and consumers of the risks of developing SJS/TEN after ingesting acetaminophen, the Virginia Healthcare Defendants may escape liability for their alleged negligent treatment of Kaylee. Nevertheless, it is also possible for both the Removing Defendants and the Virginia Healthcare Defendants to be found negligent and the cause of Kaylee's injuries, such that the claims are intertwined.

13

Moreover, even though Kaylee ingested acetaminophen on multiple occasions during a short period of time, that fact is not dispositive as each dosage is a "logically related event" so as to comprise a single transaction or occurrence. Rice, 2006 WL 1932565, at *3 (quoting In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 650 (S.D. Tex. 2005)). In addition, to the extent that plaintiffs in this case offer distinct evidence to establish their medical malpractice and product liability claims, that fact "cannot alter this analysis." Stephens, 807 F. Supp. 2d at 384. Therefore, the court finds that the claims against the Removing Defendants for failing to warn of the risks of acetaminophen and the claims against the Virginia Healthcare Defendants for negligently treating, diagnosing, and admitting Kaylee are reasonably related claims and, thus, have a logical relationship to each other. Accordingly, the court finds that the claims against both sets of defendants arise out of the same transaction or occurrence, satisfying both the federal and Virginia joinder rules.

### b. *Common Question of Law or Fact*

In order to satisfy the second prong of Rule 20, there must be a common question of law or fact among all parties in the action. Fed. R. Civ. P. 20(a)(1)(B). However, not every question of law or fact in the action must be common among the parties; rather, the rule permits joinder whenever there will be "at least one common question of law or fact" among the parties. 7 Wright et al. supra § 1653. This is a flexible test and should be "read as broadly as possible whenever doing so is likely to promote judicial economy." Id.; Stephens, 807 F. Supp. 2d at 384. The rule also does not "concern itself with whether certain questions of law and fact will arise which will not be common to all party defendants." Stephens, 807 F. Supp. 2d at 384 (emphasis in original).

Applying these principles, the court finds that there is at least one common question of

law or fact in this case. Plaintiffs note two common assertions against defendants: (1) failure to warn of the risks of acetaminophen and developing SJS/TEN, and (2) failure to associate the connection between acetaminophen and SJS/TEN. Moreover, there is a common question of fact in this case as to "which defendant had information regarding [the drug's] risks and whether that information was adequately disclosed." In re Accutane Prods. Liab., 841 F. Supp. 2d 1243, 1247 (M.D. Fl. 2012); see also Larson, 2013 WL 5937824, at *13 ("[T]here are several common questions of fact between the two sets of defendants, including the propriety of prescribing HUMIRA to an HIV+ person for the treatment of psoriasis."); Moote v. Eli Lilly, No. C-06-472, 2006 WL 3761907, at *3 (S.D. Tex. Dec. 21, 2006) (finding common issues among the defendants, mainly whether the manufacturer informed the doctor of the drug's risks, and finding that the claims against both parties will require "resolution of identical legal issues such as causation and damages."); Copeland v. Eli Lilly, No. 05-04318, 2005 WL 3533394, at *3 (W.D. Miss. Dec. 22, 2005) ("[T]he chain of communication—and any breaks in it—from the drug manufacturer to the patient is a common issue of fact."); Jamison v. Purdue Pharm. Co., 251 F. Supp. 2d 1315, 1323 (S.D. Miss. 2003) ("[T]he factual nexus that connects all the parties is the drug Oxycontin...."). Also, plaintiffs seek to recover the same damages for Kaylee's injuries from all defendants, which provides further support to the court's finding that there is at least one common question of law or fact between the two groups of defendants. Wyatt, 651 F. Supp. 2d at 498; In re Accutane, 841 F. Supp. 2d at 1247. Perrigo contends, however, that the medical malpractice claims involve questions about the professional standard of care, whereas the product liability claims involve proof of the design, testing, manufacturing, and labeling of acetaminophen. Although there may be separate factual allegations and distinct legal standards for the Removing Defendants and the Virginia Healthcare Defendants, those differences do not

15

preclude the court's finding that there is at least one common question of law or fact in this case.

Most importantly, the court finds that if plaintiffs had not joined both the Removing Defendants and the Virginia Healthcare Defendants in this action, then each set of defendants could utilize the "empty chair" defense, and conveniently blame Kaylee's injuries on the missing defendants at trial. Larson, 2013 WL 5937824, at *13; Stephens, 807 F. Supp. 2d at 384. This could lead to a situation where "each group of defendants would file third party claims against the persons or entities in the other group." Id. at *14. Similar to the facts in Wyatt, "the defendants will almost certainly debate which defendant is most responsible for the injuries ...[,] [t]he injuries themselves, the extent of the injuries, and what caused those injuries[.]" 651 F. Supp. 2d at 498. Therefore, the court finds that these claims must be resolved against both the Removing Defendants and the Virginia Healthcare Defendants in the same action.

Finally, the court finds that the purpose behind the fraudulent misjoinder exception is not present in this case. Fraudulent misjoinder occurs when the plaintiff joins non-diverse defendants in order to prevent defendants from removing the case to federal court. Wyatt, 651 F. Supp. 2d at 496. Even if the court were to adopt the fraudulent misjoinder doctrine, there is no evidence that plaintiffs joined the Virginia Healthcare Defendants in order to defeat jurisdiction. In fact, the joinder rules are meant to be interpreted liberally in order to ensure that claims regarding similar issues are tried together and will "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Larson, 2013 WL 5937824, at *14 (quoting Saval, 710 F.2d at 1031).

Accordingly, without deciding whether to adopt the fraudulent misjoinder doctrine, the court finds and concludes that both the federal and state permissive joinder rules are met, and, thus, that there is no fraudulent misjoinder in this case.

16

## III. Rule 21

Even if a court finds that the parties are properly joined in a case, it has discretion to sever the claims against the parties pursuant to Rule 21 of the Federal Rules of Civil Procedure. The rule provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. ... [and] may also sever any claim against a party." This rule provides federal courts with the discretion to drop non-diverse parties in order to achieve complete diversity, Koehler v. Dodwell, 152 F.3d 304, 308 (4th Cir. 1998), as long as that party is not indispensable under Rule 19 of the Federal Rules of Civil Procedure, Hardaway v. Checkers Drive-In Restaurants, Inc., 483 F. App'x 854, 855 (4th Cir. 2012) (per curiam). A party is indispensible if "in that person's absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). When deciding whether to sever claims under Rule 21, district courts also consider "fundamental fairness, judicial economy, prejudice, undue delay, as well as the dual threat of duplicitous litigation and inconsistent verdicts." John S. Clark Co., Inc., v. Travelers Indem. Co of Ill., 359 F. Supp. 2d 429, 441 (M.D.N.C. 2004). The Federal Rules of Civil Procedure are meant to give district courts discretion to structure cases in a manner that will promote fairness to parties, trial convenience, and efficient administration of justice. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) ("Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."). As such, Rule 21

17

discretion "should be exercised sparingly." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 838 (1989).

In this case, Perrigo argues that, even if the Virginia Healthcare Defendants were properly joined, the court should exercise its discretion and sever the claims against those defendants because they are not necessary parties. Specifically, it contends that the claims against the Virginia Healthcare Defendants would not necessarily resolve the claims against the Removing Defendants. The court, however, declines to exercise its discretion in this case. As previously explained, it is possible that the disposition of the claims against the Removing Defendants will affect the Virginia Healthcare Defendants' liability, and vice versa. If the court were to sever the claims in this case, a jury in the state court action may find that the Virginia Healthcare Defendants were not negligent in treating Kaylee because the Removing Defendants failed to warn them of the risk of developing SJS/TEN after taking acetaminophen. Then, in a subsequent product liability action in federal court, a jury may find that the Removing Defendants properly warned of the connection between SJS/TEN and acetaminophen usage. Thus, it is clear that severing the claims in this case will increase the risk of inconsistent verdicts. See Reuter v. Medtronics, Inc., No. 10-3019, 2010 WL 4628439, at *5 (D.N.J. Nov. 5, 2010) ("To the extent each [d]efendant tries to shift liability, ... [s]evering the claims would result in the duplication of evidence, increase the cost of litigation, and carries with it the potential for inconsistent verdicts."). Again, both sets of defendants in this case will likely use the "empty chair" defense if there is separate federal and state litigation, which weighs against the court exercising its Rule 21 discretion. Although the court recognizes that there are certain factual allegations and legal standards that are distinct between the Removing Defendants and the Virginia Healthcare Defendants, the overarching allegation in this case is a global failure to warn

of the connection between acetaminophen and SJS/TEN, which ultimately led to Kaylee's injuries. Therefore, in line with the principle that courts should exercise Rule 21 discretion sparingly, the court finds that the considerations of fairness to parties, trial convenience, and efficient administration of justice all weigh in favor of it declining to sever the claims against both sets of defendants.[4]

Accordingly, the court concludes that it does not have jurisdiction over this case because of the lack of complete diversity and, thus, will remand the case to state court.

## IV. Attorneys' Fees and Costs

Finally, having decided to remand the case, the court must determine whether to award attorneys' fees and costs to plaintiffs. The court, when remanding a case, "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). In their motion to remand, plaintiffs argue that the court should award them attorneys' fees and costs because the Removing Defendants acted in bad faith by removing this case. Given the lack of

---

[4] The court also notes an additional policy concern that is not present in this case. The district court in Sullivan v. Calvert Memorial Hospital found that a "critical policy reason" for exercising its discretion to sever the two defendant groups under Rule 21 was that severance would allow the plaintiff's claim against the manufacturer defendant to be transferred to a multi-district litigation ("MDL") panel. No. 15-1188, 2015 WL 4614467, at *5 (D. Md. Jul. 30, 2015). This MDL factor, whether mentioned explicitly or not, was present in several other cases in which the district court severed the claims against manufacturing defendants and healthcare defendants, including cases cited by Perrigo in support of its motion to sever. See, e.g., Mayfield v. London Women's Care, PLLC, No. 15-19, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015); Kelly v. Aultman Physician Ctr., No. 5:13CV0994, 2013 WL 2358583, at *2 (N.D. Ohio May 29, 2013); Cooke-Bates v. Bayer Corp., No. 3:10-CV-261, 2010 WL 3984830, at *4 (E.D. Va. 2010); Joseph v. Baxter Int'l Inc., 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009); Sutton v. Davol, Inc., 251 F.R.D. 500, 505 (E.D. Cal. 2008); In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig., No. 0-1487, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007); Greene v. Wyeth, 344 F. Supp. 2d 674, 676 (D. Nev. 2004); In re Rezulin Prods. Liab. Litig., No. MDL 1348, 00 Civ. 2843, 2003 WL 21276425 (S.D.N.Y. Jun. 2, 2003). This consideration is significant, as one district court found, in order "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." Sutton, 251 F.R.D. at 505. To the extent that Perrigo attempts to minimize this factor, the court is constrained to disagree.

consistency among district courts regarding the fraudulent misjoinder doctrine and whether to sever claims under Rule 21, the court concludes that the Removing Defendants had an objectively reasonable basis for removal. Accordingly, the court declines to award attorneys' fees and costs to plaintiffs.

## Conclusion

For the foregoing reasons, the court will grant plaintiffs' motion to remand and deny Perrigo's motion to sever the claims brought by plaintiffs against the Removing Defendants and the Virginia Healthcare Defendants. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 12th day of November, 2015.

_____
Chief United States District Judge